**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **ALAN RICHARD HALL,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **V.** | : | |
| | : | **NO. 5:23-cv-00205-TES-MSH** |
| **RICK SHEPARD,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER & RECOMMENDATION

Plaintiff Alan Richard Hall, a prisoner in the Georgia Diagnostic and Classification Prison in Jackson, Georgia, has filed a complaint pursuant to 42 U.S.C. § 1983. Compl., ECF No. 1; Recast Compl., ECF No. 5. Plaintiff also filed a motion for leave to proceed in this action *in forma pauperis*, Mot. for Leave to Proceed *In Forma Pauperis*, ECF Nos. 2 & 6, which was denied. Order, ECF No. 7. Plaintiff has now paid the $402.00 filing fee, and thus, his complaint is ripe for preliminary review.

On that review, Plaintiff will be permitted to proceed for further factual development on his due process claim against Assistant Commissioner Ahmed Holt, Field Operations Manager Robert Toole, Regional Director Rick Shepard, Warden Brian Adams, Warden Morales, Warden Joseph Polite, Warden Joe Williams, Counselor Tillman, and Counselor Reynolds. It is **RECOMMENDED** that Plaintiff's Eighth Amendment cruel and unusual punishment claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim, as set forth below.

**PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT**

I.      Standard of Review

Because he is a prisoner seeking redress from state actors, Plaintiff's complaint is subject to a preliminary review. *See* 28 U.S.C. § 1915A(a) (requiring the screening of prisoner cases). When performing this review, the court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys," and thus, *pro se* claims are "liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

A claim is frivolous if it "lacks an arguable basis either in law or in fact." *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (internal quotation marks omitted). The Court may dismiss claims that are based on "indisputably meritless legal" theories and "claims whose factual contentions are clearly baseless." *Id.* (internal quotation marks omitted). A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (first alteration in original). In other words, the complaint must allege enough facts "to raise a reasonable expectation that discovery will

reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under §1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

II.   Plaintiff's Allegations

In his complaint, Plaintiff asserts that, on April 28, 2021, he was transferred from Smith State Prison, where he was in general population, to the Tier III program in the Georgia Diagnostic and Classification Prison ("GDCP"). Recast Compl. 5, ECF No. 5. Prior to being transferred, Plaintiff had not received any disciplinary report for more than a year. *Id.* When he arrived at GDCP, Plaintiff asked Warden Morales why he was being transferred and asserted that his constitutional rights were violated because he did not receive a hearing forty-eight hours before the transfer or a classification hearing on his arrival. *Id.* Plaintiff also asked Counselor Reynolds for a copy of his assignment memo, but she said that she did not have one on file. *Id.* Plaintiff refers the Court to his original

handwritten complaint for further details.[1]   *Id.*

In the original complaint, Plaintiff asserts that, before he was transferred, Plaintiff was working in the kitchen at Smith State Prison.   Compl. 2, ECF No. 1.   While getting ready for work on the morning of April 28, 2021, Plaintiff was told to pack his property. *Id.*   Plaintiff had not committed any disciplinary infraction or received any report for such an infraction.   *Id.*   Plaintiff states that Brian Adams was the warden of Smith State Prison when Plaintiff was transferred.   *Id.*

Plaintiff notes that Standard Operating Procedures provide for a transfer to the Tier III program to be initiated through a request that goes from the warden of the institution to the regional director.   *Id.*   Plaintiff asserts that Defendant Rick Shepard is the regional director responsible for his transfer.   *Id.* at 1.   According to the Standard Operating Procedures, if the request is approved by the regional director, the offender is served with a copy of the assignment and receives a formal hearing.   *Id.* at 2-3.   Plaintiff asserts that his due process rights were violated because he did not receive any disciplinary report or formal hearing before he was transferred.   *Id.* at 3.

When Plaintiff arrived at GDCP, Warden Morales and his staff failed to conduct a classification hearing or serve Plaintiff a "copy of anything."   *Id.*   Plaintiff asked Warden

---

[1]The Eleventh Circuit has held that "an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading."   *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982).   By filing the recast complaint on the proper form, Plaintiff satisfied the Court's order for him to recast his complaint.   Because Plaintiff specifically refers to the factual statement in his original handwritten complaint, the undersigned now considers that statement in addressing Plaintiff's claims.

Morales why he was transferred, and Warden Morales said that it was because of two other prisoners coming from Smith State Prison and "being tied in with a[n] officer who was caught bringing money in allegedly for one of the prisoners who allegedly was her boyfriend." *Id.* Plaintiff asserts that the two other prisoners were cellmates and that he was not housed in the same dorm with those prisoners. *Id.* One of the prisoners admitted to forcing the guard to bring money in for him. *Id.* The two prisoners were brought to GDCP a week before Plaintiff was transferred. *Id.*

One day, Plaintiff was coming in from the yard when he read his door chart, which said that he had introduced contraband to the prison. *Id.* at 4. A week after arriving at GDCP, Plaintiff was served with a disciplinary report dated April 29, 2021, which stated that contraband was found in his cell. *Id.* Plaintiff contends that anything that was found would have only been found after he was already packed up and on his way to GDCP. *Id.* Plaintiff also notes that he had a cellmate before he was transferred, implying that any contraband may have belonged to his cellmate. *Id.* Regardless, Plaintiff was not notified prior to the transfer or given a chance to present witnesses or submit objections. *Id.*

At the time that he filed his complaint, Plaintiff had been held in GDCP for twenty-five months. *Id.* He had moved through the five phases of the Tier program and had been recommended for a stepdown in August 2022, but he apparently had not received the stepdown by the time that he filed his complaint. *Id.* Plaintiff had also completed the required O.U.T. program with Counselor Reynolds. *Id.*

Plaintiff notes that more than 305 days in a special housing unit has been considered an atypical and significant hardship. *Id.* On May 10, 2023, Plaintiff went to a twenty-

four-month hearing with the classification committee where he spoke to Field Operations Manager Robert Toole. *Id.* The Standard Operating Procedures provide that offenders are not to be held in the Tier III program for more than twenty-four months. *Id.* Toole did not render a decision at the hearing but told Plaintiff that Assistant Commissioner Ahmed Holt would come talk to Plaintiff that Friday. *Id.* Holt came to the dorm that Friday and pulled out two prisoners but never spoke to Plaintiff. *Id.*

Plaintiff asserts that the hearing did not comply with the Standard Operating Procedures because he did not receive a copy of the ninety-day hearing review form forty-eight hours before the hearing. *Id.* He also did not receive a decision within ten days after the hearing. *Id.* Plaintiff further states that the Standard Operating Procedures provide for service of the review form if the recommendation to release the prisoner from Tier III is denied, and Plaintiff had not received any notice of a decision. *Id.*

As noted above, Plaintiff asserts that his due process rights have been violated. *Id.* Plaintiff further contends that he has been subjected to cruel and unusual punishment by being held in the Tier III program for longer than 305 days. *Id.* Plaintiff names as defendants Assistant Commissioner Ahmed Holt, Field Operations Manager Robert Toole, Regional Director Rick Shepard, Warden Brian Adams, Warden Morales, Warden Joseph Polite, Warden Joe Williams, Counselor Tillman, and Counselor Reynolds. *Id.* at 1-2; Recast Compl. 4, ECF No. 5.

   III.   Plaintiff's Claims

      A.   Due Process

Plaintiff asserts that he was denied due process with regard to his placement and

retention in the Tier III program.   The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without due process of law." U.S. Const. amend. XIV.   In order to establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must generally show that a person acting under color of state law deprived him of a constitutionally protected liberty or property interest without constitutionally adequate process.   *See, e.g.*, *Foxy Lady, Inc. v. City of Atlanta*, 347 F.3d 1232, 1236 (11th Cir. 2003) (per curiam).

"Whether an inmate has a protected liberty interest that would entitled him to due process protections 'is often a difficult determination in the context of a prison, because prisoners have *already* been deprived of their liberty in the ordinary sense of the term.'" *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1346 (11th Cir. 2016) (quoting *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999) (emphasis in original)).   The Supreme Court has therefore "made clear that there are two circumstances in which a prisoner can be further deprived of his liberty such that due process is required." *Bass*, 170 F.3d at 1318.   First, a prisoner is entitled to due process "when an increased restraint 'exceed[s] [his] sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Jacoby*, 835 F.3d at 1346 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (alterations in original)).   Second, a prisoner is entitled to due process if a change in the prisoner's conditions of confinement "'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"   *Id.*

The length of time a prisoner is held in a segregation program may be taken into consideration when addressing a due process claim.   In this regard, a relatively short term

of segregation will rarely give rise to a prisoner's liberty interest in the absence of exceptionally harsh conditions.  *Compare Sandin*, 515 U.S. at 476 (placement in segregation for a term of thirty days did not give rise to a protected liberty interest) *with Wallace v. Hamrick*, 229 F. App'x 827, 830-31 (11th Cir. 2007) (placement in administrative segregation for twenty-eight days without hot water, adequate ventilation, or opportunity to exercise while awaiting disciplinary hearing supported due process claim).  Conversely, a prisoner's long-term or indefinite detention in administrative or disciplinary segregation may, depending on the circumstances, constitute an "atypical and significant hardship" in relation to the ordinary incidents of prison life and therefore require some procedural protections.  *See Sandin*, 515 U.S. at 484, *see also Williams v. Fountain*, 77 F.3d 372, 374-75 (11th Cir. 1996); *Jones v. Baker*, 155 F.3d 810, 813 (6th Cir. 1998) (long-term confinement may be constitutionally objectional depending on the length of or reason for the confinement).

As an initial matter, to the extent that Plaintiff's due process claims are based on his contention that the provisions of the Standard Operating Procedures were not followed, those procedures do not create an enforceable liberty interest.  *See Morrall v. Warden*, 859 F. App'x 883, 884-85 (11th Cir. 2021) (per curiam) (citing *Sandin v. Conner*, 515 U.S. 472, 482-84 (1995), and *Doe v. Moore*, 410 F.3d 1337, 1350 (11th Cir. 2005)).  Thus, the failure to follow the Standard Operating Procedures does not, without more, constitute a deprivation of due process.

With regard to whether the conditions in the Tier III program constitute an atypical or significant hardship, Plaintiff does not set forth any factual allegations regarding the

8

difference in conditions between general population and the Tier III program. Plaintiff does, however, allege that he was transferred into the program with no prior warning and with no classification hearing upon his transfer. Moreover, he asserts that he has been held in the Tier III program for more than two years despite having proceeded through the phases of the program and having been recommended for a stepdown in August 2022, ten months before he filed the complaint. Although it appears from the complaint that Plaintiff has been given hearings, construing the allegations in his favor, it seems that those hearings may not be meaningful given Plaintiff's progress through the phases and continued retention in the program.

In light of the lack of notice and the extensive period of time that Plaintiff has been held in the Tier III program, the Court cannot say that Plaintiff's due process claims are frivolous at this time. Although the extent to which each defendant was involved in the placement and retention of Plaintiff in the Tier III program is unclear, Plaintiff alleges that each defendant played a part in the decision to place him in the program and in the subsequent retention. Thus, at this point, Plaintiff will be permitted to proceed for further factual development on his due process claim against Defendants Assistant Commissioner Ahmed Holt, Field Operations Manager Robert Toole, Regional Director Rick Shepard, Warden Brian Adams, Warden Morales, Warden Joseph Polite, Warden Joe Williams, Counselor Tillman, and Counselor Reynolds.

B.    Cruel and Unusual Punishment

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S 337, 349 (1981), but it also does not permit inhumane conditions, and it is settled that

"the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In this regard, the Eighth Amendment, which prohibits "cruel and unusual punishments," places restraints on prison officials such as by preventing them from using excessive physical force against prisoners. *See Hudson v. McMilllian*, 503 U.S. 1 (1992). These officials also must provide humane conditions of confinement; "ensure that inmates receive adequate food, clothing, shelter, and medical care;" and "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

Here, Plaintiff does not set forth any allegations showing that he was deprived of any basic necessities, that he was at risk of harm, or that the conditions of his confinement otherwise somehow amounted to an Eighth Amendment violation. Instead, Plaintiff appears to rely solely on his confinement in the Tier III program for a significant period of time as the basis for this claim. Moreover, Plaintiff does not show that any named defendant imposed a cruel and unusual punishment on Plaintiff in any way. Therefore, it is **RECOMMENDED** that this claim be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this order and recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this order and recommendation. The parties may seek an extension of time in which to file written

objections, provided a request for an extension is filed prior to the deadline for filing written objections.   Any objection is limited in length to **TWENTY (20) PAGES**.   *See* M.D. Ga. L.R. 7.4.   Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.   *See* 11th Cir. R. 3-1.

### ORDER FOR SERVICE

Because Plaintiff is not proceeding *in forma pauperis* in this case, and the Court having found that Plaintiff has made colorable constitutional violation claims against **DEFENDANTS ASSISTANT COMMISSIONER AHMED HOLT, FIELD OPERATION MANAGER ROBERT TOOLE, REGIONAL DIRECTOR RICK SHEPARD, WARDEN BRIAN ADAMS, WARDEN MORALES, WARDEN JOSEPH POLITE, WARDEN JOE WILLIAMS, COUNSELOR TILLMAN, and COUNSELOR REYNOLDS**, it is **ORDERED** that Plaintiff serve these Defendants and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.   Defendants are reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

Plaintiff must secure service upon the Defendants in accordance with the provisions of Fed. R. Civ. P. 4.   The Court is providing Plaintiff with a Rule 4 Service Package, which contains instructions, the necessary forms to use for waiver of service, and a copy of Fed. R. Civ. P. 4.   While Plaintiff may request a waiver of service of summons from Defendants in accordance with Fed. R. Civ. P. 4(d), if Defendants do not waive service, Plaintiff must

make arrangements with a person authorized to make service under Fed. R. Civ. P. 4(c). In accordance with Fed. R. Civ. P. 4(m), failure to achieve service within 90 days after filing of the Complaint may result in dismissal of this case.  If Plaintiff is financially unable to arrange for service of process, he may submit a motion to the Court in which he (1) explains to the Court what efforts he made to perfect service and (2) includes an affidavit in support of his claim of indigence, along with a certified copy of his trust fund account statement (or institutional equivalent) for the previous six-month period.

## DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) for failure to prosecute.  Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed.  This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court.  A party need not serve the opposing party by

mail if the opposing party is represented by counsel.   In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court.   If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished (i.e., by U.S. Mail, by personal service, etc.).

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.   Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.   Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian.   Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective

13

order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall <u>not</u> be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party.   The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.   No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

**SO ORDERED and RECOMMENDED**, this 27th day of September, 2023.

/s/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE